IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01883-NRN

ROBERT E. QUINTANO,

    Plaintiff,

v.

CAPTAIN ARAGON,
SERGEANT PALMER, and
SERGEANT HALE,

    Defendants.

---

**ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED
COMPLAINT UNDER RULE 12(b)(6) (ECF No. 36)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

    This prison civil rights case is before the Court upon the consent of the parties to magistrate judge jurisdiction, ECF Nos. 32 & 33, and an Order of Reference entered by Chief Judge Philip A. Brimmer on March 13, 2025, ECF No. 34. Now before the Court is Defendants Richard Aragon, Sergeant Angel Palmer-Morales, and Sergeant Nathaniel Hale's ("Defendants") Motion to Dismiss Amended Complaint Under Rule 12(b)(6) ("Motion to Dismiss"). ECF No. 36. Plaintiff Robert E. Quintano ("Plaintiff") filed a response, ECF No. 37, and Defendants filed a reply, ECF No. 38.

    The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. PROCEDURAL HISTORY[1]

Plaintiff is an inmate in the custody of the Colorado Department of Corrections ("CDOC") and currently incarcerated at the Arkansas Valley Correctional Facility ("AVCF") in Ordway, Colorado. He brings this action under 42 U.S.C. § 1983[2] related to the alleged mishandling of a Prison Rape Elimination Act ("PREA") complaint that resulted in him being put in danger and retaliated against. He asserts three claims for relief against three CDOC correctional officers—Sergeant Hale, Captain Aragon, and Sergeant Palmer-Morales—who are sued in both their individual and official capacities.

In Claim 1, Plaintiff asserts that Sergeant Hale was deliberately indifferent in his failure to follow PREA reporting procedures. On January 27, 2024, Plaintiff reported a PREA violation involving another inmate, Robert Powers, to Sergeant Hale three times. ECF No. 9 at 4–5. Despite assuring Plaintiff that he would "take care of it," Sergeant Hale did nothing, which left Plaintiff "subject to further sexual harassment and/or attempted sexual assaults by inmate Powers for three days further violating [his] Constitutional rights." *Id.* at 5. Sergeant Hale's inaction also forced Plaintiff to call the PREA hotline on January 30, 2024, to report the incidents of sexual harassment and attempted sexual assault, which led to further danger discussed below.

---

[1] The following allegations are taken from the non-dismissed portions of Plaintiff's Amended Complaint, ECF No. 9, and all non-conclusory allegations are presumed true for the purposes of the Motion to Dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Section 1983 provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law.

Claim 2 is a deliberate indifference and retaliation claim asserted against Captain Aragon. ECF No. 9 at 6. Plaintiff alleges that after he called the PREA hotline, Captain Aragon summoned Plaintiff to his office, encouraged him to talk about the details of the PREA complaint, and "assured [Plaintiff] that [he] would not be moved or retaliated against in any way." *Id.* Plaintiff then informed Captain Aragon of the sexual harassment by Powers. The next day Mr. Quintano was moved to one of AVCF's most dangerous units, Unit 6. *Id.*

Claim 3 is brought against Sergeant Palmer-Morales. Plaintiff alleges that on January 30, 2024, Sergeant Palmer-Morales approached him while "wearing bright blue shakedown gloves which drew attention to the situation as other inmates immediately noticed as soon as he entered the pod." *Id.* at 7. In Powers' hearing, Sergeant Palmer-Morales ordered Plaintiff to stay in his cell while Powers was moved to another pod. Plaintiff claims that this public disclosure of the PREA complaint in front of Powers and other inmates put him in serious danger of being labeled a "rat." *Id.* at 7–8.

Plaintiff seeks damages, a declaratory judgment, and multiple forms of prospective injunctive relief. *Id.* at 10.

## II. LEGAL STANDARDS

### a. Pro Se Plaintiff

Plaintiff proceeds pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v.*

3

*Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### III.   Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### b. Qualified Immunity

Defendants argue they are entitled to qualified immunity because Plaintiff has failed to demonstrate that his federal constitutional rights were violated. "The doctrine of

5

qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id*. at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. Qualified immunity applies unless the plaintiff can satisfy both prongs of the inquiry. *Id*. at 232.

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, it is important to bear in mind that because this defense is being evaluated in relation to a Rule 12(b)(6) motion, Defendants are subjected "to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). As a result, it is Defendants' conduct "as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id*. (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Thus, when "addressing the issue [of qualified immunity] at the motion to dismiss and not the summary judgment stage, [a] [p]laintiff is only required to allege a constitutional violation that is plausible on

its face." *Torres v. White*, No. 08-cv-196-JHP-FHM, 2009 WL 37617, at *2 (N.D. Okla. Jan. 6, 2009).

IV. **ANALYSIS**

    a. **Eighth Amendment Deliberate Indifference**

To state an arguable Eighth Amendment claim, Plaintiff must allege specific facts that demonstrate deliberate indifference to a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quotation omitted). Although prison officials have a duty to protect inmates from violence at the hands of other inmates, not every injury resulting from violence between inmates results in constitutional liability. *Id.* at 833–34. An inmate asserting an Eighth Amendment claim must demonstrate (1) that the harm was "sufficiently serious" under an objective standard, and (2) that the prison officials had "subjective knowledge of the risk of harm" but did nothing to prevent it. *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008).

First, to satisfy the objective component of the standard, an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Next, to satisfy the subjective component of the standard, the inmate must show both that the prison official was "aware of facts from which the inference could be drawn that a substantial risk of harm exists" and that the prison

official did in fact "draw the inference." *Id.* at 837. "[D]eliberate indifference entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835 (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Turning to the Amended Complaint, the Court finds that Plaintiff's Eighth Amendment deliberate indifference claim fails as to Sergeant Hale and Captain Aragon. Regarding Sergeant Hale, the Court agrees with Defendants that Plaintiff does not sufficiently allege the subjective element necessary to state a claim. Plaintiff claims that Sergeant Hale should have *immediately* reported Plaintiff's PREA allegations, and because he did not, Plaintiff had to make the report himself. It is unclear why an inmate having to make a PREA report constitutes an excessive risk of harm to that inmate, but even if it did, Plaintiff does not allege that Sergeant Hale consciously disregarded that risk. Instead, the Amended Complaint states that Plaintiff reported Powers' sexual harassment to Sergeant Hale on Saturday, January 27, 2024, and Sergeant Hale told him to "get with him on Monday," January 29, 2024. This suggests that Sergeant Hale did not decline to act in the face of a substantial risk of harm but instead took steps to address the issue with Plaintiff. The fact that he did not do so immediately (Plaintiff called the PREA hotline on January 30, 2024) may not have satisfied Plaintiff, and may even have been negligent, but mere negligence is not enough to state a constitutional claim. Additionally, Plaintiff's allegation that Sergeant Hale failed to follow CDOC procedures, accurate or not, is largely irrelevant; the violation of a prison regulation does not state a constitutional violation unless the prison official's behavior "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir.

8

2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). Plaintiff does not adequately allege that Sergeant Hale's failure to immediately make a PREA report violated Plaintiff's constitutional rights.

As to Captain Aragon, Plaintiff claims that soon after he called the PREA hotline, Captain Aragon asked to speak to him about what was going on. Despite Captain Aragon assuring Plaintiff that he would not be retaliated against, the next day, Plaintiff was moved to "one of the most dangerous units," Unit 6. There are obvious problems with this claim. First, Plaintiff does not allege that Captain Aragon was involved in the decision to move Plaintiff to Unit 6, and generally, to hold a government official individually liable under § 1983, the plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation. *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). In other words, there must be an affirmative link between the constitutional deprivation and the defendant's personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)). That affirmative link is missing here. Second, Plaintiff does not allege that Captain Aragon had subjective knowledge that Unit 6 was dangerous, either in a general sense or specifically to Plaintiff. Thus, Plaintiff has also failed to allege the subjective prong of a deliberate indifference claim against Captain Aragon.

Plaintiff's allegations against Sergeant Palmer-Morales are qualitatively different, however. He claims that Sergeant Palmer-Morales, conspicuously wearing his "bright blue shakedown gloves," approached Plaintiff in front of other inmates, escorted him to

9

his cell, and instructed him to "lock down" while he moved Powers, who was standing directly behind Sergeant Palmer-Morales and observing what was happening. The Court finds that this states a claim under the Eighth Amendment. The Tenth Circuit has held that labeling an inmate a snitch and informing other inmates of that label with knowledge of the obvious risk of danger associated with that label violates the Eighth Amendment. *See Benefield v. McDowall*, 241 F.3d 1267, 1271–72 (10th Cir. 2001) (holding it is clearly established law that labeling an inmate a snitch and informing other inmates of that label with knowledge of the obvious risk of danger associated with that label violates the Eighth Amendment even though the inmate is never actually harmed); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (reversing the district court and finding that the plaintiff adequately alleged that, by labeling him a snitch, the prison deputy "intended to do harm . . . by inciting inmates to beat him"). The Tenth Circuit further held that "allegations of a prison officer's deliberate disclosures of dangerous information about an inmate's status" can sufficiently state a claim under the Eighth Amendment. *See Brown v. Narvais*, 265 F. App'x 734, 736 (10th Cir. 2008).

Defendants argue that Plaintiff's allegations are insufficient to state a claim for deliberate indifference because Sergeant Palmer-Morales did not mention Plaintiff's PREA allegations or otherwise indicate that Powers was being moved because of a PREA complaint. The Court is not persuaded. Sergeant Palmer-Morales, in front of other inmates, including Powers, required Plaintiff, and Plaintiff alone, to lock down; Sergeant Palmer-Morales then removed Powers from the pod. It would be reasonable to infer, based on these allegations, that Powers' transfer was related in some way to Plaintiff; i.e., that Plaintiff snitched on him. Indeed, Plaintiff alleges that other inmates

did draw that inference. *See* ECF No. 9 at 7 ("By the time Powers was moved to A-Pod the entire inmate population of C-pod knew the Plaintiff had made a PREA report against Mr. Powers . . . ."). Sergeant Palmer-Morales's actions raised an objective danger of Plaintiff being labeled a snitch or informant, and Plaintiff adequately alleges that Sergeant Palmer-Morales knew what he was doing. *See id.* at 7–8 (stating that Sergeant Palmer-Morales, "as a trained officer[,] knew better than to go about the procedure the way he did and knew what the outcome would be," and further noting that Sergeant Palmer-Morales ignored reasonable alternatives to ensure Plaintiff's safety, "such as having me go to the office to instruct me out of earshot of Mr. Powers to lock down").

Accordingly, Plaintiff's Eighth Amendment claims should be dismissed as to Sergeant Hale and Captain Aragon, but not Sergeant Palmer-Morales.

### b. First Amendment Retaliation

In the First Amendment context, the Supreme Court has acknowledged that "federal courts must take cognizance of the valid constitutional claims of prison inmates. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citation omitted). "[Prison] officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). To state a First Amendment retaliation claim, Plaintiff must demonstrate: (1) he was engaged in constitutionally protected activity, (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage

11

in that activity, and (3) the defendant's adverse action was substantially motivated as a response to Plaintiff's constitutionally protected activity. *See Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007).

Plaintiff alleges Captain Aragon and Sergeant Palmer-Morales retaliated against for filing PREA complaints, which the Court agrees is a protected activity. *See Johnson v. Whitney,* 723 F. App'x 587, 594 (10th Cir. 2018) (filing of a grievance qualifies as protected activity); *see also Granger v. Santiago*, No. 3:19-CV-60 (MPS), 2021 WL 4133752, at *5 (D. Conn. Sept. 10, 2021) ("Filing of a PREA complaint is protected activity, for the same reason that filing of prison grievances constitutes protected activity."). But, as discussed above, Captain Aragon is not alleged to have been responsible for, or even involved in, the decision to move Plaintiff to a different unit, so this claim fails for lack of personal participation.

Defendants further argue that Plaintiff fails to allege in a non-conclusory manner that Sergeant Palmer-Morales had a retaliatory motive when he removed Powers from Plaintiff's pod. Liberally construing the Amended Complaint, the Court concludes that Plaintiff's allegations of retaliation of Sergeant Palmer-Morales are sufficient to survive a Rule 12(b)(6) attack. Plaintiff claims that the day after he engaged in constitutionally protected activity (by making a PREA complaint against Powers), Sergeant Palmer-Morales removed Powers from the pod in a manner that could only have been intended to communicate to the other inmates that Plaintiff had informed on Powers in some way. If true, this would chill a person or ordinary firmness from continuing to pursue remedies under PREA.

As to retaliatory motive, Plaintiff is required to "allege specific facts" showing that "but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks omitted); *see Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." (internal quotation marks omitted)). The specific factual allegations must "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018) (ellipses and internal quotation marks omitted).

> To make a prisoner's claim of retaliation by a prison official plausible, it must be supported by (1) specific facts about the adverse action taken against the prisoner to make it plausible that the action was not motivated by legitimate grounds and (2) specific facts showing why the particular official would be motivated to improperly harm the prisoner.

*Guy v. Lampert*, 748 F. App'x 178, 181 (10th Cir. 2018).

Plaintiff has alleged enough specific facts here to state a plausible claim. Although Defendants correctly observe that temporal proximity alone cannot amount to a cognizable retaliation claim, the Court cannot ignore that Plaintiff alleges that within one day of making his PREA report, Sergeant Palmer-Morales effectively labelled Plaintiff a snitch in front of Powers, the subject of his PREA complaint, and the entire pod. This is especially significant given the easy and obvious alternatives Plaintiff mentions in the Amended Complaint, like Sergeant Palmer-Morales instructing Plaintiff to lock down out of earshot of the other inmates, or, at the very least, Powers himself. Plaintiff also alleges that Sergeant Palmer-Morales is a "seasoned" correctional officer who knew not to "throw[] [Plaintiff] under the bus in front of Powers and in front of the entire pod," and who put Plaintiff at risk of physical harm by Powers and others by his

actions. Plaintiff's allegations support a plausible inference that Sergeant Palmer-Morales was aware that Plaintiff had made a PREA complaint against Powers (why else would he be getting moved?), and that the public method Sergeant Palmer-Morales chose to remove Powers from the pod intentionally placed Plaintiff in danger. At this stage, that is sufficient to state a retaliation claim.

### c. Claims Against Defendants in their Official Capacities

While suits filed against public officials for actions taken pursuant to their official duties are effectively suits against the state entity itself, the Supreme Court has recognized an exception to Eleventh Amendment sovereign immunity for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). But *Young* and its progeny make clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir.1998) (citations and quotations omitted). So while the Eleventh Amendment bars official capacity claims for money damages and relief for prior acts, Plaintiff may seek to vindicate his federal rights through a request for prospective injunctive relief.

Plaintiff sues Defendants in their official capacities and requests the following injunctive relief: (1) ensure the adequate training of CDOC staff upon hiring; (2) prohibit Powers from being in an alleged relationship with another inmate; (3) remove Powers and his partner from AVCF; and (4) prohibit Plaintiff from being transferred from ACVF to other facilities.

Defendants argue that Plaintiff's requests for injunctive relief against Defendants in their official capacity should be dismissed because they are not sufficiently connected

to the alleged constitutional violations and because Defendants do not have the power to grant the injunctive relief being sought.

The Court denies Defendants' request as premature. "The appropriateness of permanent injunctive relief need not be analyzed by the court unless and until the plaintiff prevails." *Quade v. Milyard*, No. 07-cv-00229-WYD-MJW, 2008 WL 4097471, at *8 (D. Colo. Aug. 5, 2008) (citing *Roshandel v. Chertoff*, 2008 WL 1969646, *9 (W.D. Wash. May 5, 2008)), *report and recommendation adopted in part, rejected in part*, 2008 WL 4097469 (D. Colo. Sept. 2, 2008). While the Court suspects it may ultimately agree with Defendants that much of the prospective injunctive relief sought by Plaintiff is without merit, it will consider these arguments at a later, more appropriate time. *See Friends of Frederick Seig Grove # 94 v. Sonoma Cnty. Water Agency*, 124 F. Supp. 2d 1161, 1172 (N.D. Cal. 2000) ("While the Court may ultimately agree with the defendants that injunctive relief is inappropriate, it is by no means evident that the Court can reach such a determination on a motion to dismiss. Accordingly, the defendants' motion to dismiss the plaintiff's request for injunctive relief is denied as premature."); *In re K–Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 550 (D.N.J. 2004) (Where "equitable relief could prove to be an appropriate remedy . . . [t]his Court is loathe at ... [the motion to dismiss] stage in the proceedings to curtail its broad equity powers to fashion the most complete relief possible. In short, while this Court may ultimately agree with Defendants that claims for injunctive relief are inappropriate, dismissal at this stage of the proceedings would be premature.").

## V.  CONCLUSION

Accordingly, it is hereby **ORDERED** that Motion to Dismiss Amended Complaint Under Rule 12(b)(6), ECF No. 36, is **GRANTED IN PART** and **DENIED IN PART**. All claims against Defendants Hale and Aragon are **DISMISSED WITHOUT PREJUDICE**. The only remaining claims are against Defendant Palmer-Morales in his individual and official capacity for deliberate indifference and retaliation.

It is further **ORDERED** that the stay entered on March 13, 2025, *see* ECF No. 35, is **LIFTED**. Defense counsel shall promptly contact the Court (303-335-2403) to set a Scheduling Conference.

Dated:     September 18, 2025
           Denver, Colorado

N. Reid. Neureiter
United States Magistrate Judge